Filed 5/16/13  Marriage of Restaino CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of DEBORAH K. and JOHN M. RESTAINO, JR. <br><br> DEBORAH K. RESTAINO, <br><br>     Appellant, <br><br>         v. <br><br> JOHN M. RESTAINO, JR., <br><br>     Appellant. | G045429 <br><br> (Super. Ct. No. 05D001004) <br><br> O P I N I O N |

Appeals from a judgment of the Superior Court of Orange County, Nancy A. Pollard, Judge.  Motion to dismiss appeal.  Motion for sanctions.  Motions denied.  Judgment affirmed in part and reversed in part.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller and Lisa R. McCall for Appellant Deborah K. Restaino.

Law Offices of Steven E. Briggs, Steven E. Briggs and Luis A. McKissick, for Appellant John M. Restaino, Jr.

This is another appeal in the parties' ongoing divorce. In a prior appeal Deborah K. Restaino (wife) challenged rulings contained in a December 2009 judgment that determined the couple's marital standard of living, used to calculate permanent spousal support award, and the trial court's characterization and division of John M. Restaino Jr.'s (husband) partnership interest in his dissolved law firm. We affirmed the finding on the marital standard of living, but reversed the ruling on the partnership interest. (*In re Marriage of Restaino* (Jan. 13, 2012, G043194) [nonpub. opn.].)

While the earlier appeal was pending, the trial court conducted a hearing on several issues: (1) Accountings for both pretrial law firm distributions divided between the parties and spousal support arrearages; (2) motions for attorney fees; and (3) requests for sanctions. In May 2011, the court entered a judgment on these matters.

Both parties appeal the latter judgment. Husband challenges the spousal support arrearages ruling. In response, wife moves to dismiss his appeal, arguing it seeks to reverse a now-final prior judgment and fails to present a meritorious basis to reverse the trial court's decision.

In her appeal, wife attacks the denial of her motion for attorney fees incurred during the trial on property division and spousal support, the award of sanctions against her, and the denial of attorney fee motions brought by two firms that previously represented her. (*In re Marriage of Borson* (1974) 37 Cal.App.3d 632; *Borson* motions.) Husband moves for sanctions, claiming wife's briefs contain factual misstatements and omissions.

At our request, the parties submitted letter briefs on whether the trial court had jurisdiction to rule on any of these issues during the pendency of the prior appeal. (Code Civ. Proc., § 916, subd. (a).)

We shall deny both motions and reverse the May 2011 judgment as to the spousal support arrearages, including the requirement wife repay advance distributions

2

received from husband's former law firm, plus its denial of her attorney fee request, and remand these matters for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Wife petitioned to dissolve the couple's 21-year marriage shortly after they separated in November 2004. During the marriage, husband first worked as a podiatrist, then attended law school, and later became an attorney and partner in the law firm of Lopez, Hodes, Restaino, Milman & Sikos (Lopez Hodes). The firm handled mass tort lawsuits involving the pharmaceutical industry.

In April 2005, the parties filed a stipulation, providing husband would pay wife temporary spousal support that consisted of a monthly base amount and a percentage "of any earned income received . . . in excess of his . . . salary" that "include[d], but [was] not limited to bonuses . . . ." The court entered the stipulation as an order.

While the divorce action was pending, Lopez Hodes dissolved. Its partners agreed to arbitrate the winding down of the firm. The arbitration ultimately resulted in a confidential settlement where husband agreed to relinquish his partnership interest in return for payment of salary and benefits through 2006, monthly payments as an independent contractor for 2007, plus attorney fee distributions from uncompleted litigation he continued to handle for the firm. Husband later joined a Colorado law firm.

Before the trial on property division and spousal support, Lopez Hodes made several fee distributions to husband from pending litigation. By agreement, husband divided some of these disbursements with wife without prejudice to a subsequent determination of the community's interest in the funds.

After trial, the court entered judgment in December 2009. It found the bulk of the Lopez Hodes's fee distributions were husband's separate property and the portion of the pretrial distributions wife received exceeded her share of the community's interest.

3

The judgment also ordered husband to pay wife spousal support of $6,200 each month, plus 19 percent of his income over his base monthly salary. It directed the parties to conduct accountings on the amounts due to each party from the Lopez Hodes's fee distributions and any spousal support arrearages husband owed wife. The judgment "reserve[d]" for later determination "each party's request for attorney fees and costs and request for sanctions previously noticed and [a] *Borson* motion . . . ." (Underlining omitted.) By stipulation, the parties consolidated a second former attorney's *Borson* motion with the other issues.

Within weeks of the December 2009 judgment, husband filed an order to show cause to modify it concerning his spousal support obligation. In May 2010, husband filed a second order to show cause concerning the April 2005 stipulation's applicability to his income "above the base income received . . . in 2005, 2006, 2007 and 2008," and "in connection with each disbursement received by [wife] . . . whether earned or by way of distributions attributable to the firm of Lopez, Hodes . . . ." At a hearing in July, the court denied both orders to show cause.

In August, the court commenced a hearing on the reserved issues. When it began, the parties submitted two written stipulations. The first was the accounting required by the December 2009 judgment concerning the pretrial division of the Lopez Hodes's fee distributions. It determined, based on the findings in that judgment, wife had to repay husband $939,288 from the nearly $1.6 million she received.

The second stipulation involved the accounting on spousal support arrears. It declared the accounting was prepared "in accordance with the rulings of the court (including those disputed by [husband])." One disputed ruling was a finding, based on the April 2005 order's "earned income received . . . in excess of . . . salary" requirement, that husband constructively received the pretrial overpayments of fee distributions transferred to wife. The accounting determined husband owed wife $1,207,075 in support arrears "from April 15, 2005 through December 31, 2009."

4

After several days of trial, the court took the matter under submission. In November, the court issued a tentative ruling, later amended to cover two omitted issues.

On May 26, the court entered a formal judgment on the further reserved issues. It denied both *Borson* motions, awarded wife over $19,000 in attorney fees plus $1,785 in sanctions for successfully defending against husband's December 2009 and May 2010 orders to show cause. But the court denied her request for attorney fees incurred in the trial on property division and support issues and ordered her to pay husband's attorney $75,000 in sanctions. On the spousal support arrears and the overpayment of Lopez Hodes's fee distributions, the court accepted the parties' two stipulations and resolved their competing obligations by directing the parties to pay each other the sum of $939,288 on a date certain with husband paying wife the balance of support arrearages in monthly installments.

DISCUSSION

1. *Husband's Appeal*

a. *Background*

As noted, the stipulation that husband owed wife over $1.2 million in spousal support arrears was based on the trial court's ruling the April 2005 order's phrase "earned income received . . . in excess of . . . salary" meant the portion of the pretrial Lopez Hodes's fee distributions he transferred to wife, but later determined to be his separate property, were deemed bonuses constructively received by him. Husband's opening brief contends the court violated the rules of contractual interpretation and exceeded its jurisdiction in so ruling. Alternatively, he argues that, in any event, since the factual basis for the stipulation on spousal support arrears was reversed in the prior appeal, the trial court's May 2011 decision on this issue also must be reversed. In addition, he claims the $6,200 a month base spousal support award sufficed to meet

5

wife's needs and the court erred by requiring him to pay a percentage of his income exceeding his base salary as additional support. Wife disputes these arguments and seeks to dismiss husband's appeal.

By subsequent order, we asked the parties to brief the effect of wife's then-pending appeal from the earlier judgment on the issues before the court at the trial on reserved issues. We now conclude the trial court lacked jurisdiction to rule on the spousal support arrearage because it effectively sought to enforce the court's characterization and division of husband's partnership interest and the support arrearage finding is irreconcilable with our judgment in the prior appeal. As a consequence, husband's alternative contention is moot. On the second issue, we conclude husband's attack on the permanent spousal support award is untimely.

### b. The Effect of the Prior Appeal

With certain exceptions not relevant to this case, Code of Civil Procedure section 916, subdivision (a) (hereafter section 916(a)) provides "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." Cases have recognized the stay imposed by this statute divests the trial court of "subject matter jurisdiction over any matter" covered by it while an appeal is pending. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196-197.) Although the parties voluntarily litigated the issues raised during the trial on reserved issues, "[t]he loss of jurisdiction [section 916(a)] is so complete that even the consent of the parties is ineffective to reinvest the trial court with jurisdiction over the subject matter of the appeal. [Citation.]" (*Lerner v. Superior Court* (1952) 38 Cal.2d 676, 680.)

6

*Varian Medical Systems, Inc. v. Delfino, supra,* 35 Cal.4th 180 explained the statutory phrase "matters embraced therein or affected" by a judgment "'depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' [Citation.]" (*Id.* at p. 189.) *Varian* cited three circumstances where this test is satisfied. One is where "the trial court proceeding . . . directly or indirectly seek[s] to 'enforce, vacate or modify [the] appealed judgment or order.' [Citation.]" (*Id.* at p. 189, fn. omitted.) A second is "if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable." (*Id.* at p. 190.) The third arises where "the very purpose of the appeal is to avoid the need for that proceeding." (*Ibid.*)

The first and second circumstances apply in this case. Our prior decision held, contrary to the trial court's December 2009 judgment, the portion of husband's confidential settlement with Lopez Hodes allowing him to receive fee distributions from uncompleted litigation constituted a quantification of his partnership equity. As the parties acknowledged this asset had been acquired during marriage, it was subject to equal division. The characterization and division of husband's partnership interest was not at issue during the hearing on reserved issues, but by treating the bulk of the fee distributions he transferred to wife as constructively received bonuses for the purpose of calculating spousal support, based on the finding the overpayment was his separate property, the May 2011 judgment indirectly enforced the December 2009 judgment's division of husband's partnership equity in Lopez Hodes.

*Lerner v. Superior Court, supra,* 38 Cal.2d 676 presented a similar situation. The trial court modified a child custody order by awarding the father custody of the couple's son, but conditioned it by requiring the child remain in the California school he then attended. While the mother's appeal from this ruling was pending, the father obtained an order to transfer the child to a New Jersey school. The Supreme Court

7

issued a writ prohibiting enforcement of the latter ruling. "[A]t the time [the mother] perfected her appeal, she had custody of [the child] under a decree providing that the boy should attend [a California s]chool," and "[a]n order which so disturbs the custody of the child as to permit him to be taken out of this state, pending final determination of the appeal, would be an act in excess of the jurisdiction of the trial court. [Citation.]" (*Id.* at p. 684; see also *Socialist Workers Etc. Committee v. Brown* (1975) 53 Cal.App.3d 879, 890-891 [during appeal from denial of preliminary injunction to enjoin campaign finance law disclosure requirements, trial court lacked jurisdiction to grant defendants' request for injunction requiring plaintiffs to comply with law].) By using its previous property division finding to calculate the amount of husband's unpaid spousal support, the trial court acted in excess of its jurisdiction during the pendency of the earlier appeal.

Second, since a reversal of the trial court's characterization and division of the Lopez Hodes's fee distributions was one possible outcome of wife's appeal from the December 2009 judgment, the trial court's constructive receipt of income finding could not be harmonized with the prior appeal. *In re Marriage of Varner* (1998) 68 Cal.App.4th 932 is analogous to this case. There the trial court entered a judgment dividing the parties' community property and ordering the husband to pay support. The wife unsuccessfully moved to set aside the judgment. While her appeal from the latter ruling was pending, the trial court issued a ruling, in part, terminating its jurisdiction over spousal support after one year. The Court of Appeal found the trial court lacked jurisdiction to take this action. "The reversal of a judgment dividing community property and the reallocation of those assets upon remand constitute changed circumstances which may justify a modification of spousal support obligations. [Citation.] If the trial court has, during the pendency of the appeal, ordered the termination of its jurisdiction over spousal support, then any modification of that support upon remand is impossible, and the effect of the appellate decision is diminished." (*Id.* at p. 937.) Similarly here, a

8

reversal of the trial court's characterization and division of the Lopez Hodes's fee distributions would affect the amount of spousal support arrearages husband owed.

Wife argues section 916(a) does not apply. Noting her "initial appeal . . . challenged the trial court's ruling that the distribution of proceeds from the Lopez Hodes partnership dissolution was almost entirely [husband's] separate property," she claims "preserving the status quo would only mean preserving the status of the Lopez Hodes's fee distributions until this court's determination of whether they were separate or community in character . . . ." Thus, "[d]etermination of the amount of support arrearages or of attorney fees and sanctions would not in any way alter the effectiveness of [the prior] appeal . . . ."

As for the issues of attorney fees and sanctions, we agree. The trial court's December 2009 judgment reserved its resolution of these matters. Further, the evidence relevant to a determination of these issues was largely collateral to the evidence concerning property division and support.

But, the same is not true for the ruling on the amount of unpaid spousal support. "[I]t is the substantive issues of the hearings and not the procedural aspects of the appeals which cannot embrace the same matters if the court below is to proceed. In the present case if the matter embraced within the [first] order . . . is the same as that embraced in the second order . . ., the proceeding resulting in the second . . . should have been stayed." (*Estate of Sherman* (1956) 46 Cal.2d 534, 536-537.) That is the case on the support arrearages issue. The parties' stipulations were premised on the correctness of the prior judgment's determination of the characterization and division of the Lopez Hodes's fee distributions. Thus, the trial court's May 2011 judgment effectively enforced that division and was irreconcilable with a potential outcome of the prior appeal. We conclude, the support arrearage ruling contained in the trial court's May 2011 judgment, based on and enforcing the court's prior ruling on the characterization and division of the Lopez Hodes distributions that was the subject of a pending appeal, was void.

9

*c. The Permanent Spousal Support Award*

Husband also attacks the trial court's decision requiring him to pay 19 percent of income exceeding his base salary as additional spousal support. He argues the $6,200 a month support award sufficed to meet wife's needs and the trial court failed to make any contrary finding on this issue. Wife responds husband has failed to present an adequate record supporting this claim and his attack on the permanent spousal support award is both untimely and unsupported by any intelligible argument.

We primarily agree with wife's arguments. First, much of husband's argument is based on material not before us. The bulk of his record citations are to the appellate record prepared for wife's appeal from the December 2009 judgment. Husband claims he incorporated the prior appeal's record under California Rules of Court, rule 8.147. Not so. Rule 8.147(b)(1) requires "[a] party wanting to incorporate by reference all or parts of a record in a prior appeal in the same case" to "specify those parts in its designation of the record. [¶] (A) The prior appeal must be identified by its case name and number. . . . [¶] (B) If the transcript incorporates by reference any such record, the cover of the transcript must prominently display the notice 'Record in case number: ___ incorporated by reference,' identifying the number of the case from which the record is incorporated." Husband's designation of the record in this case fails to mention the appellate record in the earlier appeal. Nor does any part of the record prepared for husband's appeal satisfy the requirements of subdivision (b)(1)(B).

Second, while wife is wrong in arguing husband is appealing from a now-final judgment, the scope of his appeal is necessarily limited to the issues presented in the May 2011 judgment. Husband's notice of appeal states it is taken from portions of the May 2011 judgment on further reserved issues. That decision is an appealable judgment. (Code Civ. Proc., § 904.1, subd. (a)(1); *In re Marriage of Fink* (1976) 54 Cal.App.3d 357.)

10

But while an appellate court "may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party" (Code Civ. Proc., § 906), it cannot "review any decision or order from which an appeal might have been taken." (*Ibid*.; see *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 ["'law of this state does not allow, on an appeal from a judgment, a review of any decision or order from which an appeal might previously have been taken'"].) Like the May 2011 decision, the trial court's December 2009 judgment dealing with issues of property division and spousal support constituted an appealable judgment. Wife appealed from the December 2009 judgment, but husband did not do so.

He argues the issues he raises were not ripe for appeal until there was a determination as to the amount he would have to pay wife as retroactive spousal support. We disagree. The trial court's finding on marital standard of living and its requirement that husband pay wife 19 percent of his bonus income were settled by the December 2009 judgment. "[I]f an order is appealable, appeal must be taken or the right to appellate review is forfeited [Citation.]" (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) Consequently, husband's attack on the trial court's marital standard of living finding and the award of a percentage of his excess income as part of spousal support cannot be reviewed in this appeal.

Finally, while husband's notice of appeal listed other issues (child support, sanctions, and attorney fees), he did not mention them in the opening brief. In his reply brief husband claims he has not abandoned these issues. Again he is wrong. "'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

Therefore, we shall reverse the portion of the May 26, 2011 judgment determining the amount of spousal support arrearages husband owes wife, along with the

11

related property division setoff ruling, and remand the matter for a further hearing on this issue. On all other issues raised by husband, the judgment is affirmed.

## 2. *Wife's Appeal*

Wife attacks the trial court's denial of her request for attorney fees incurred during trial on the property division and spousal support, its imposition of sanctions on her, and the denial of the two *Borson* motions.

### a. *Background*

During the August 2010 hearing, wife testified she did not trust husband and that he was uncooperative on several issues. On cross-examination, she acknowledged many of the issues had been referred to a referee and that she previously was sanctioned on one matter. She also claimed the confidentiality of the Lopez Hodes's arbitration made it difficult to obtain information about fee distributions to husband. She had questions; how the arbitrator determined what portion of a fee distribution would be awarded to husband, whether he might be required to repay distributions in the future, and who would be responsible for the tax liability on distributions.

In contrast, the record reflects wife was aware the confidential settlement agreement terms and deposed husband and two other Lopez Hodes partners before the property division and spousal support trial. Husband also gave wife and her attorney authorization to speak with the arbitrator handling the Lopez Hodes matter. The attorney representing her at the time billed over one-and one-half hours for a meeting with the arbitrator.

In addition, husband made two unsuccessful pretrial settlement proposals. First, he sent wife a proposed judgment, in part, providing the parties "shall each receive one-half of" six drug litigation fee distributions he would receive under the confidential settlement with his 2006 salary and benefits and 2007 independent contractor salary

12

treated as his separate property. Husband's attorney stated he never received a written response to the proposal, but was orally told it had been rejected. A second pretrial settlement offer proposed the parties would (1) equally divide fee distributions received from two lawsuits, and (2) on two other lawsuits, they would equally divide the first $500,000, split the next $500,000 on a 65/35 basis, with husband receiving 100 percent of any amount over $1 million. Again, wife did not respond to the proposal.

In its tentative ruling, the trial court denied wife's request for attorney fees for litigating the property division and spousal support claims and also ordered her to pay husband $75,000 as a sanction. The court rejected, as unsupported by the evidence, wife's claims (1) "she and her counsel . . . were unable to uncover information relating to the basis for [the Lopez Hodes] negotiated settlement," (2) her "need[ for] more information regarding some . . . claims . . . that might be chargeable to [husband]," and (3) that husband had engaged in "misconduct." The court declared it could not "understand how an offer of 50/50 [of the Lopez Hodes's fee distributions] could have been more fair," and "[w]ere she to have accepted the offer . . ., any doubt or dissatisfaction with a future disbursement could have been the subject of a post-judgment motion."

Thus, the court concluded wife "did not have a viable theory to get more than 50% . . . from the cases pending in the [Lopez Hodes] wind down. Her refusal to accept the offer of [husband] reflects frivolous conduct within [Family Code section] 271, which frustrated early resolution of this case, and therefore leads the [c]ourt to deny her request for fees under [Family Code sections] 2032 and 271." (Unless otherwise indicated, all further statutory references are to the Family Code.) Finally, declaring "[f]ees under [section] 271 are conduct related not income related," the court concluded "it is not necessary to enumerate the section 4320 factors upon which to base a fee award."

13

*b. Attorney Fees*

Wife argues the trial court erred in denying her request for attorney fees incurred in the trial on property division and spousal support. She claims a fee award under sections 2030 and 2032 must be "based on a need and ability to pay," but the court relied solely on her refusal to accept husband's settlement offers. We agree the trial court erred in ruling on the fee motion.

Section 2030, subdivision (a)(1) declares, "the court shall ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding . . . ." "The purpose of section 2030 is to ensure parity" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.)

Section 2032, subdivision (b) requires a "court [to] take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately," including "to the extent relevant, the circumstances of the respective parties described in Section 4320. . . ." Thus "section 2032, . . . not only requires that the court consider the financial resources of each party, but also requires a broader analysis of the parties' relative circumstances. [Citation.]" (*In re Marriage of Cryer, supra* 198 Cal.App.4th at p. 1056.)

"In making this determination, the trial court has broad discretion" and "we will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order. [Citation.]" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975.) But "'the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion.' [Citation.]" (*Ibid.*) Thus, a court's affirmative failure or refusal "to exercise that discretion" constitutes "sufficient

14

grounds, by itself, to reverse [its] decision." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1314.)

"While no particular language is required in an order awarding attorney fees . . ., the record (including, but not limited to, the order itself), must reflect an actual exercise of discretion and a consideration of the statutory factors in the exercise of that discretion. [Citations.]" (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 254.) Clearly, this requirement was not met in this case. The trial court refused to conduct the appropriate need-based analysis. Its November 2010 tentative ruling, focused on wife's "actions . . . with respect to th[e] settlement . . . along with" her "positions . . . throughout these proceedings," plus the fact she "did not have a viable theory to get more than 50% of income from the cases pending in the [Lopez Hodes] wind down. Her refusal to accept [husband's pretrial settlement proposals] reflects frivolous conduct . . . which frustrated early resolution of this case, and therefore leads the [c]ourt to deny her request for fees . . . ."

The court further erred by relying on section 271 to deny wife's attorney fee motion. That statute allows a court to "base an award of attorney's fees and costs" on whether a party's actions helped reduce litigation costs through cooperation and settlement. Nothing in it allows a court to deny a fee request on this ground. In addition, contrary to the court's understanding, section 271 declares a "court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities" and prohibits imposing a fee award "that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).)

Consequently, the trial court's ruling must be reversed. However, in doing so, we make two observations. First, as the trial court recognized wife's refusal to consider husband's pretrial settlement proposals is a relevant consideration in ruling on her attorney fee motion. (*In re Marriage of Falcone & Fyke, supra,* 203 Cal.App.4th at p. 975 ["The trial court may also consider the other party's trial tactics"]; see also *In re*

15

*Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167 [same].)  Husband made arguably reasonable proposals for resolving the parties' community interest in his law partnership, but wife refused to consider them for unacceptable reasons.  Lack of trust exists in every marital dissolution.  If it were otherwise, the parties would likely not be in court at all.  Wife had access to both the arbitrator and information concerning the confidential negotiations over the dissolution of Lopez Hodes.  By refusing to even consider husband's settlement proposals, she effectively insulated herself from obtaining answers to the questions about the effect of the partnership's dissolution on the fees distributed to husband.

Second, contrary to her appellate briefs' repeated claims of poverty, the record reflects wife had substantial assets from which to pay litigation expenses.  The December 2009 judgment reflects before the trial on property division and spousal support, wife had received over $200,000 of community assets.  At the August 2010 hearing on the further reserved issues she acknowledged previously receiving $750,000 from the parties' sale of the marital residence and that she had purchased a home in Newport Beach.  Even under the trial court's erroneous division of the Lopez Hodes's fee distributions in the December 2009 judgment, wife was entitled to retain over $600,000.  That wife had funds to retain counsel and litigate the issues was "not itself a bar to an order that the other party pay part or all of the fees and costs," but her "[f]inancial resources" were a "factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties . . . ."  (§ 2032, subd. (b).)

### c. Sanctions

Husband sought sanctions under section 271.  As noted, it allows a court to "base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation

16

between the parties and attorneys." (§ 271, subd. (a).) The court awarded husband $75,000 in sanctions, citing his pretrial settlement offer "to split 50/50 . . . all net proceeds received from the [Lopez Hodes] wind down," to which wife never responded, the lack of evidence supporting her claim she needed more information, the fact the trial resulting in the December 2009 judgment "consumed over twenty-two . . . days of trial, with a break in between with hopes of settlement," and wife's lack of success at trial.

Wife argues the trial court's award is error for three reasons. First, she claims husband failed to provide adequate "notice of the specific conduct for which sanctions were being requested." Section 271, subdivision (b) allows "[a]n award of attorney's fees and costs . . . only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (Fam. Code, § 271, subd. (b).) This issue "present[s] a question of law for our independent review. [Citation.]" (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177.)

The record shows wife had notice of husband's sanctions request. The trial court's December 2009 judgment expressly reserved "the issue of . . . sanctions previously noticed . . . ." This issue was also mentioned during a pre-judgment hearing on the statement of decision prepared for the December 2009 judgment. Husband again mentioned his "request for an award of sanctions" in a trial brief filed June 28, 2010, one-and one-half months before the hearing on the further reserved issues. Finally, in a supplemental trial brief filed the day of the hearing, husband "[gave] notice of his intent to seek an award of sanctions by way of attorney fees and costs for [wife's] failure to conduct herself consistent with the public policy of promoting settlement of litigation from November 2006 . . . during which time [wife] ignored or rejected multiple efforts to settle this matter . . . ." (See *In re Marriage of Petropoulos, supra,* 91 Cal.App.4th at p. 178 ["Wife was well aware that she was subject to such sanctions even if the trial court did not expressly say so"].)

17

In addition, during the afternoon session on August 10, the trial judge declared, "we are now on the issue of attorney fees sought by each party, as well as [Code of Civil Procedure section] 128.7 motion filed by [wife] and a . . . section 271 motion filed by [husband]; is that correct?" Wife's attorney did not object, but merely reminded the court it also needed to rule on the "two *Borson* motions." Her first lack of notice objection came after husband had documented his two settlement offers and she was unable to produce admissible evidence of a response to the proposals.

Wife argues "a noticed motion is required," citing our prior decision in *Niko v. Foreman* (2006) 144 Cal.App.4th 344. But there we merely noted that "'[section] 271 . . . requests generally should be made by noticed motion . . . .'] [Citation.]" (*Id.* at p. 369.) Furthermore, *Niko* is factually distinguishable. It rejected a claim the trial court erred in denying a sanctions request contained in a party's written closing argument. "Niko failed to indicate he desired a hearing on sanctions and he knew neither party had the time or opportunity to respond to points raised by their opponent in the written closing argument," and the "request for sanctions . . . not only failed to comply with the well-established procedural rules, it also denied [his opponents'] due process right to respond or be heard on the matter." (*Ibid.*) The same is true of *In re Marriage of Duris & Urbany* (2011) 193 Cal.App.4th 510, where "[t]he trial court first raised the sanctions issue during closing arguments," and "then summarily imposed" them. (*Id.* at pp. 513-514.)

Wife had notice at least as early as the trial court's December 2009 judgment that husband intended to seek sanctions against her. Again, husband mentioned the issue in his briefs before the hearing on the further reserved issues. Nor did wife object when the court announced it intended to consider the sanctions request along with the attorney fee motions.

Second, wife claims the court erred by failing "to consider the statutory factors" concerning "the parties' incomes, assets, and liabilities, and the financial burden"

in making the sanctions award.  As mentioned above section 271, subdivision (a) requires "consideration all evidence concerning the parties' incomes, assets, and liabilities" and prohibits an award "that imposes an unreasonable financial burden on the party against whom the sanction is imposed."  (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226.)  Thus, "the sanction must be scaled to the payor's ability to pay and must be made in light of both parties' financial circumstances.  [Citation.]"  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 828.)

But "[s]anctions under section 271 are committed to the discretion of the trial court, and will be reversed on appeal only on a showing of abuse of that discretion, that is 'only if, considering all of the evidence viewed more favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.'  [Citations.]"  (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.)  In reviewing the claim "we indulge all reasonable inferences to uphold [the sanctions award].  'We will not interfere with the order for sanctions unless the trial court abused its broad discretion in making it.'  [Citation.]"  (*In re Marriage of Falcone & Fyke, supra,* 164 Cal.App.4th at p. 828.)

As discussed above, wife's argument primarily relies on misstatements of fact on the extent of her wealth.  Contrary to her appellate briefs, she had received substantial sums of money from which to pay the fees, including substantial community assets and funds before the trial on property division and spousal support.  She asserts the "'over-payments'" "the court . . . ordered her to pay [husband] . . . constituted almost all of the money she had received from the preliminary distribution from Lopez[] Hodes . . . ."  Not so.  Wife received nearly $1.6 million in pretrial distributions.  The post-December 2009 judgment accounting on what she owed husband required her to repay $939,288, still leaving her with over $600,000.  The evidence supports a conclusion the trial court did not impose an unreasonable financial burden by ordering her to pay husband $75,000 in attorney fees as sanctions.

19

Finally, wife asserts the award violated public policy by sanctioning her for "insist[ing] on her right to trial . . . ." But contrary to her absolute right to go to trial claim, section 271, subdivision (a) declares sanctions are permissible where a party or his or her attorney's "conduct . . . frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." Viewing the evidence in the light most favorable to the trial court's order, we conclude wife's argument misconstrues the basis for the sanctions award. It sanctioned wife for two reasons. First, she failed to respond to husband's settlement proposals. When her attorney asserted the right to reject husband's settlement proposals and try the property division issue during a February 2011 hearing, the court responded, "She didn't say, 'I don't like your settlement offer.' [Wife and her attorney] didn't say squat." Second, the court's tentative ruling cited wife's lack of "a viable theory to get more than 50%[]of income from cases pending in the [Lopez Hodes] wind down." Given the statute's express purpose of using a fee sanction to reduce litigation costs by encouraging the parties to cooperate with each other and to attempt to resolve issues through settlement, plus the fact wife's obstinate refusal to do so led to a lengthy trial, the award in this case did not violate public policy.

Even though we subsequently reversed the trial court's ruling on the division of husband's partnership interest, that reversal provided wife the same relief that she potentially could have achieved by engaging in settlement with husband before trial on property division and spousal support. Under the circumstances, we conclude the trial court did not abuse its discretion by ordering wife to pay husband $75,000 in attorney fees as a sanction for refusing to respond to husband's settlement proposals.

### d. The Borson Motions

Wife's former attorneys, the firm of Des Jardins & Haapala, ALC (Des Jardins) filed a motion for attorney fees under *In re Marriage of Borson, supra,* 37

20

Cal.App.3d 632. The determination of this motion was reserved in the December 2009 judgment. Two months later, a second *Borson* motion was filed by wife's former trial counsel, Dorothy L. Carfrae. The hearing on this motion was consolidated with the hearing on the further reserved issues.

In its tentative ruling, the court denied both requests. On Des Jardins's motion, the court found it "does not contain a declaration by [wife] that she agreed or consented to [the] motion []or agreed or approved that the fees and costs requested in the motion were rendered in the course of reasonable and necessary services to her. In fact, subsequent to the filing of [the] motion, [wife] sued . . . Des Jardins . . . , thereby leading the [c]ourt to believe that, in fact, she did not agree to this motion." (Capitalization omitted.) Initially the court cited several reasons to deny Carfrae's motion, but ultimately based its decision solely on the fact an income and expense declaration did not accompany the motion.

Wife attacks the denial of Des Jardins's motion, claiming she did consent to the fee request despite the fact she had sued the firm for malpractice. As for Carfrae's request, she claims she submitted an income and expense declaration two weeks before Carfrae filed the fee motion.

In *Borson*, after the wife discharged her attorneys, but before she substituted in a new counsel, the former attorneys filed a motion on her behalf requesting the husband pay their fees and costs. The trial court granted the motion after wife retained new counsel. The appellate court affirmed. "[N]otwithstanding [the wife's] discharge of these attorneys, they, as her agents, had the implied authority to file thereafter the motion on her behalf that appellant pay these additional sums," and "by not appearing at the hearing of the . . . motion[] after prior notice . . . and there objecting to the motion for additional fees and costs, she acquiesced in their having made the motion for her." (*In re Marriage of Borson, supra,* 37 Cal.App.3d at pp. 637-638.)

21

We conclude the trial court properly denied both *Borson* motions. Concerning Des Jardins, *In re Marriage of Erickson & Simpson* (2006) 141 Cal.App.4th 707 explained "[t]he pivotal inquiry . . . [i]s whether the fee request pursued by the discharged attorneys was legitimately made on behalf of the former client *with the former client's approval.* Because the right to have fees paid belongs to the party, not to counsel, the party must expressly or impliedly authorize a discharged attorney to pursue a motion requesting fee payment on the party's behalf for the trial court to have jurisdiction over the motion. In contrast, a party's failure to convey this authorization is fatal to the court's power to rule." (*Id.* at p. 713.) The question of whether wife authorized Des Jardins's motion presented a factual question. She did not submit a supporting declaration when it was filed and she later sued the firm for malpractice. Thus, the court could reasonably conclude wife had not authorized the motion.

As for Carfrae's request, former rule 5.118(b) of the California Rules of Court required "[a] completed *Income and Expense Declaration . . .* be *attached* to an application for an injunctive or other order when relevant to the relief requested." (Repealed effective Jan. 1, 2013; italics added.) Carfrae's *Borson* motion failed to attach an income and expense declaration from wife even though it would have been relevant to the relief requested. Wife claims she filed an income and expense declaration several weeks earlier. But former rule 5.118(b) required the income and expense declaration be "attached" to the motion. Merely because wife's prior declaration may have been "current" under former California Rules of Court, rule 5.128(a) (repealed effective Jan. 1, 2013) did not invalidate the trial court's ruling.

DISPOSITION

The motions to dismiss and for sanctions on appeal are denied. Paragraphs 4, 5, 6, and 7 of the judgment on further reserved issues are reversed. The matter is

22

remanded to the superior court for a determination, in light of our prior reversal of the December 2009 judgment, of the amount of spousal support arrearages, if any, husband owes to wife and her motion for attorney fees.  In all other respects the judgment on further reserved issues is affirmed.  The parties shall bear their own costs on appeal.


                                  RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.